By the Court—Bosworth, Ch. J.
There can be no doubt that the plaintiffs are liable to the defendant, for the value of the buildings in question on the 1st of May, 1858.
I think there is no doubt of the right of the defendant to maintain an action at law to recover such value, inasmuch as the mode provided by the covenants in the lease to ascertain such value has failed to accomplish that result, without any fault of either party.
Thompson v. Charnock, (8 T. R., 134,) Haggart v. Morgan, (1 Seld., 422,) Greason v. Keteltas, (17 N. Y., 491,) Cooper v. Shuttleworth, (34 Eng. L. & Eq., 551,) Clarke v. Westrope, (37 id., 313,) and Avery v. Scott, (20 Eng. L. & Eq., 327, 8 Exch. R., 487, and S. C., 36 Eng. L. & Eq,, 1,) seem to support this proposition, and leave its accuracy free from doubt.
If this be so, then it follows that the plaintiffs may be sued for such value at any time before the statute of limitations will operate as a bar. They must pay the costs of such action. (Code, § 304, sub. 4.) The defendant may select his own time of litigating the question of value, with the certainty that the plaintiffs must pay the expense of the litigation.
If the facts, that the value of the buildings, on the 1st of May, was payable on that day, and that the plaintiffs have, at all times since, had the use of such value, in the rents and profits of the buildings, shall be held to make them liable to pay interest, then they must occupy the position of borrowers against their will, so long as the defendant chooses to be their creditor. ' -
The plaintiffs and defendant cannot agree upon the value of the buildings. Two several sets of appraisers have been unable to agree. It is, therefore, evident, (assuming, as we must, all the appraisers to have acted honestly,) that it is a matter of difficulty, even now, to ascertain such value. That difficulty has, thus far, proved to be insuperable, while the buildings are standing and'in the very condition in which their value is to be determined, and *497 at the very time fixed to ascertain it. It is obvious that the difficulty must be, in reality, greater, when the buildings shall have been destroyed or Materially changed, and when an inspection of the buildings as they were when their value was to be ascertained cannot be had to aid witnesses in forming a judgment or to make it practicable for them to state the actual facts to enable a jury to determine it.
The plaintiffs are not in a condition to know what sum is the just valúe, so that they may tender it, and thus relieve themselves from all hazards as to liability for interest, and from the costs of any'suit the defendant may bring.
This difficulty is produced, not because they have improvidently made a contract which, by its terms, places them in this disadvantageous position, but because, notwithstanding provisions were inserted in the contract for ascertaining the value, which, according to common experience, have proved sufficient and effectual in like cases, those provisions have become spent, without accomplishing, in any respect, the purpose intended.
No action at law, and no remedy which the law has provided, is adequate to relieve them. Their right to pay, and thus terminate their liability, is as absolute and perfect as the right of the defendant to be compensated for the value of the buildings.
There can be no doubt of the accuracy of the general principles, (whatever difficulty may be experienced occasionally in making their true application,) that a court of equity has jurisdiction in cases of rights recognized and protected by the municipal jurisprudence, where a plain, adequate and complete remedy cannot be had in the courts of common law. The remedy must be plain; for, if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate; for if, at law, it falls short of what the party is entitled to, that founds a jurisdiction in equity. And it must be complete; that is, it must attain the full end and justice of the case. It must reach the whole mischief, and secure the whole right of a party in a perfect manner, at the present time and in future; otherwise, equity will interfere and give such relief and aid as the exigency of the particular case may require. (Story’s Eq., § 33.)
Bills in the nature of writs of prevention, commonly called bills in equity quia timet, are entertained to accomplish the ends *498 of precautionary justice. They are ordinarily employed to prevent wrongs or anticipated mischiefs, and not merely to redress them when done. The party seeks the aid of a court of equity because he reasonably fears some future probable injury to his rights or interests, and not because any injury has already occurred ■ which requires any compensation or other relief. The manner in which this aid is given by courts of equity is, of course, dependent on circumstances. (Id., § 826.)
Hence, when one party has a defense valid in law, but which rests upon evidence which he is in danger of losing, if the adverse party is suffered to delay the prosecution of his claims, he may, on this ground, invoke the interposition of a court of equity to secure a determination of the controversy, and an exemption from the hazards of a purposed delay to prosecute.
It is asserted, not as a mere rhetorical expression, but as in itself just, that “ the beautiful character, or pervading excellence, if one may so say, of equity jurisprudence is, that it. varies its adjustments and proportions, so as to meet the very form and pressure of each particular case in all its complex habitudes." (Story’s Eq., § 439.)
We think it is unjust that a man should be compelled against his will and without his fault, to have a demand continually hanging over him.
This injustice is more marked and severe, when without fault on his part, or any neglect in not inserting in his contract provisions suitable, according to the common course of human ' experience, to put it in his power to discharge himself from liability by tendering full performance, he is left in the condition, that the law has provided for him no means to ascertain the extent of his liability, nor furnished him with any remedies which he can employ to make satisfaction.
The injustice is aggravated, when in addition to the embarrassments already suggested, lapse of time is rendering it, from year to year, more difficult to ascertain the measure of his just liability, and when even a few years may destroy the property, itself, the fair value of which, on a given day, in the condition it then was, is the sole measure of liability.
We think it no answer to this objection, that the difficulty of the defendant, six, or twenty years after the day when the value *499 was to be ascertained, to show what it in truth then was, and his risk of losing by such delay will be as great as that of the plaintiffs.
The plaintiffs, unless guilty of some wrong or default deserving such a punishment, should not be exposed to such hazards.
The ends of justice cannot be promoted, human rights cannot be protected, nor can tribunals instituted to enforce rights, and prevent and redress wrongs, commend themselves to the esteem of mankind, by acting on the principle, that one party will stand as good a chance as the other by speculating on the issue of a suit, the trial of which is purposely delayed, until the best evidence attainable is impaired or destroyed, and acting on it because one party is willing and determined to take such chances, and on the further ground that the Courts have no power to relieve the bther from the perils of such a trial.
We cannot but think it would be a reproach to the- administration of justice, if the Courts by reason of their constitution and powers were coerced to hold that they were incompetent, on such a state of facts to relieve a party who desires and offers to do justice, but is unexpectedly and without fault placed in a condition that he cannot know what, in judgment of law, it is his duty to do, and has no means by any aid a court of law can extend to him, to ascertain the extent of that duty, or to perform it.
If these plaintiffs had entered into a contract like the present, without providing a mode of ascertaining the extent of the liability they were incurring, which, according to the ordinary course of human experience, would be adequate and effective, their claims to the interposition and aid of a court of equity might be different.
However that may be, it seems to us but a just and reasonable application of the rules we have stated, to a case of such peculiar facts and circumstances as the one before us, to hold, that the plaintiffs are entitled to relief; that it is strikingly unjust that the defendant should be permitted to compel the plaintiffs to litigate the question of the value of these buildings at a period so • remote that no vestige of them may then be left, instead of litigating it when they can be seen by persons competent to determ'' e their value, and who can thus determine such value, by a thorough examination of them, (the true value of which cannot be reached *500 in any other manner,) and who can speak of that value not only on such inspection, but with their present, and a more perfect knowledge of such property, than they can be supposed to possess after the lapse of years, during which the opinions of all competent judges of value may vary from time to time, with the change of circumstances, and the constantly recurring depression and increase in values of such property generally, as well as in particular localities.
The great hazard of loss and injustice to which the plaintiffs would be exposed by subjecting them to such a necessity, in connection with the facts that they are utterly without any remedy at law, and that they are placed in this condition without fault, or neglect on their part, either by having made an unreasonable contract, or by omitting to do all that was reasonable in the premises, is sufficient, in our opinion, not only to justify the Court in taking jurisdiction of this action, but makes the exercise of jurisdiction a duty.
The judgment must be reversed and judgment entered in favor of the plaintiffs,- but with liberty to the defendant to withdraw his demurrer, and answer in twenty days, in which event, the plain.tiffs’ costs of the demurrer at Special Term, and of this appeal, are ordered to abide-the event of the action.